UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH COLLINS, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SERVICELINK FIELD SERVICES, LLC, and DOES 1-50,<br><br>Defendants. | Case No.: 3:18-cv-02142-L-MDD<br><br>**ORDER:**<br>**(1) GRANTING PLAINTIFF'S MOTION TO REMAND [ECF No. 16];**<br><br>**(2) DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS [ECF No. 19]** |

Pending before the Court is Plaintiff JOSEPH COLLINS' ("Collins") motion to remand [ECF No. 16] and Defendant SERVICELINK FIELD SERVICES, LLC's ("ServiceLink") motion to dismiss [ECF No. 19]. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** Plaintiff's motion to remand, and Defendant's motion to dismiss is **DENIED AS MOOT**.

## I. BACKGROUND

According to the First Amended Complaint (ECF No. 17 ("FAC")), Collins and the members of the proposed class are current and former employees of ServiceLink who worked as non-exempt residential inspectors. (FAC ¶ 3.) ServiceLink dictated the

inspection locations, the inspection process, the proper procedure for meeting with the homeowners, and the applicable deadlines for completing inspections. (*Id.* ¶ 5.) After the inspections were complete, inspectors were required to write and upload detailed reports. (*Id.*)

Collins alleges that he and over 300 class members were treated as independent contractors by ServiceLink. (*Id.* ¶¶ 6, 30.) Collins typically received $3-$5 per inspection and alleges that ServiceLink did not withhold money from these payments for tax purposes. (*Id.* ¶ 6.) The inspectors were not paid for travel time, work performed from home, maintenance of personal vehicles used for work, time spent interacting with vendors, or time spent reviewing work policy changes. (*Id.* ¶ 7.) When working over four hours in a day, the inspectors did not receive paid rest breaks. (*Id.* ¶ 8.) Inspectors were not reimbursed for equipment costs or costs incurred when utilizing their own vehicles or phones while on the job. (*Id.* ¶ 9.) Neither Collins nor the proposed class members were paid for time spent working for ServiceLink outside actual residential inspections. (*Id.* ¶ 10.) Collins and the class members also did not receive: (1) premium pay for ServiceLink's alleged noncompliance with rest and meal break requirements; (2) communication regarding a meal break policy; (3) accurate and itemized wage statements; (4) wages following voluntary or involuntary employment separations; or (5) paid sick leave. (*Id.* ¶¶ 11-15.)

On August 10, 2018, Collins, on behalf of himself and other members of his class, brought an action against ServiceLink for: (1) unpaid minimum wages; (2) failure to provide paid rest periods; (3) failure to provide meal periods; (4) failure to provide itemized wage statements; (5) failure to reimburse business expenses; (6) unpaid wages in violation of Cal. Lab. § Code 2810.3; (7) unfair competition; and (8) failure to provide paid sick leave. (*See* ECF No. 1-1.)

On September 14, 2018, ServiceLink filed a notice of removal to remove this action from the San Diego Superior Court based on original and diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. (*See* ECF No. 1.) On October 12, 2018,

Collins filed an amended complaint and a motion to remand alleging that ServiceLink improperly overestimated the amount in controversy for Collins' individual claims and the claims under the Class Action Fairness Act ("CAFA"). (ECF Nos. 16, 17.)

## II. LEGAL STANDARD

"Federal courts are of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." *Id.* (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Sygenta Crop. Prot. v. Henson*, 53 U.S. 28, 32 (2002); *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1380 (9th Cir. 1988). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566; *see also Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *O'Halloran*, 856 F.2d at 1380.

Diversity jurisdiction requires complete diversity of citizenship between the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. CAFA allows federal district courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5,000,000. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013); 28 U.S.C. § 1332.

## III. DISCUSSION

The dispositive questions presented here are whether ServiceLink met its burden to show that: (1) the amount in controversy as to Collins' individual claims exceeds $75,000, (2) the amount in controversy as to the claims under CAFA exceeds $5,000,000,

3:18-cv-02142-L-MDD

and (3) it is allowed to amend its original calculations via ServiceLink's opposition to Collins' remand motion. Collins argues that ServiceLink failed to meet its burden, and therefore, this Court must remand for lack of subject matter jurisdiction. ServiceLink argues the opposite. Collins does not dispute any other jurisdictional requirements.

### A. **Collins' Individual Claims**

Collins argues that this case should be remanded to the San Diego Superior Court because ServiceLink improperly assumed a 100% violation rate for all his individual claims, which allegedly fails to overcome the strong presumption against removal. ServiceLink counters that it relied on reasonable assumptions based on Collins' own statements and the complaint in making its amount in controversy calculations.

Where, as here, the complaint does not include a prayer for a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Abrego Abrego*, 443 F.3d at 683. "If it is *unclear* what amount of damages the plaintiff has sought . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." *Gaus*, 980 F.2d at 566–67 (emphasis in original). "Under this burden, the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). Under the preponderance of the evidence standard, a defendant must establish "that the potential damages could exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010). While "a damages assessment may require a chain of reasoning that includes assumptions . . . those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* at 1197 (internal quotations

omitted). "[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides where the preponderance lies." *Id.* at 1198. "[I]f the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.* at 1199.

In the notice of removal, ServiceLink calculated the total amount in controversy for Collins' individual claims at approximately $177,000, not including attorneys' fees or the alleged unpaid sick time. (ECF No. 1 ("Notice of Removal") ¶ 30.) Because the complaint does not allege a particular violation rate, ServiceLink "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Ibarra*, 775 F.3d at 1199.

ServiceLink calculates the amount of unpaid minimum wages in controversy at $84,040, assuming that Collins "seeks unpaid minimum wages for all the hours he worked since August 10, 2014." (Notice of Removal ¶¶ 16-17.) However, this is not what is alleged in the complaint. The complaint alleges that ServiceLink "failed to pay Plaintiff . . . minimum wages *for all hours worked*." (ECF No. 1-1 Ex. A ("Compl.") ¶ 18.) (emphasis added). This is not the same as alleging that Collins was not paid for *any* of his work since August 2014. Under *Ibarra*, "a pattern and practice of doing something does not necessarily mean *always* doing something." *Ibarra*, 775 F.3d at 1198-99 (internal quotations omitted) (emphasis in original).

ServiceLink claims that it "does not have any personnel, timekeeping, or wage payment records for Collins during the time periods alleged in the Complaint" because Collins was not employed by ServiceLink and was instead employed by So. Cal. Inspections, Inc., one of ServiceLink's vendors. (ECF No. 1-2 ("Rolla Decl.") ¶¶ 8-9; *See also* ECF No. 20 ("Opp'n") at 18.) The Court finds this argument unconvincing to relieve ServiceLink of its burden. If So. Cal. Inspections, Inc. is one of ServiceLink's vendors, ServiceLink should have access to Collins' wage records and be able to use them to support its damage calculations rather than assuming a 100% violation rate. "[A]

5

defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

In his declaration, Collins clarifies that "[t]here were many weeks between August 10, 2014 and September 14, 2018 in which [he] did not perform any home inspections" and "[t]he number of inspections [he] performed for ServiceLink varied from day to day and week to week." (ECF No. 16-3 ("Collins Decl.") ¶¶ 3-4.) This schedule would amount to a much lower amount in controversy than what ServiceLink estimates, and, in fact, Collins estimates only $6,812 in unpaid minimum wages. (ECF No. 21 ("Reply") at 7-8.) Therefore, ServiceLink's inflated calculation for Collins' unpaid minimum wages is unsupported and does not meet the preponderance of the evidence standard.

ServiceLink used its unpaid minimum wages calculations to assert liquidated damages in the amount of $65,320. Because this amount is based entirely on the unreasonably inflated unpaid minimum wages calculations and the assumption of a full-time, 100% violation rate, these liquidated damages also do not meet the preponderance standard.

ServiceLink's calculations for missed rest and meal periods at $10,550 each also follow a 100% violation rate that is unsupported by any reasonable assumptions. (Notice of Removal ¶¶ 19-21.) The complaint states that Collins and the class members are entitled to penalties "for each day they were not provided compliant rest [and meal] breaks." (Compl. ¶¶ 37, 42.) This language implies that Collins was provided with rest and meal breaks on some days, but not others. Again, this language does not allege that Collins was *never* provided with rest or meal breaks as ServiceLink improperly assumes. In response, Collins argues that he was entitled to rest and meal breaks on only a fraction of the days that he worked due to his irregular schedule and frequently short work days. The resulting calculations of only $1,736 for rest breaks and $889 for meal breaks sharply contrast ServiceLink's calculations. (Reply at 7-8). Regardless of this large gap, the burden is on ServiceLink to overcome the strong presumption against removal

jurisdiction, which it did not accomplish by assuming a 100% violation rate for rest and meal periods.

Collins argues that ServiceLink's $4,000 calculation for wage statement penalties is unsupported because ServiceLink assumed Collins was paid on a weekly basis when he was actually paid every two weeks. (Collins Decl. ¶ 5.) While the complaint did not clarify that Collins was paid biweekly, it did allege that Collins and the class members were entitled to receive wage statements "semimonthly or at the time of each payment of wages." (Compl. ¶ 46.) Therefore, it was unreasonable for ServiceLink to calculate these damages while assuming Collins was paid on a weekly basis.

Collins does not dispute ServiceLink's calculation for unreimbursed business expenses, which amounts to $2,575. (Notice of Removal ¶ 25.)

A sub-issue presented is whether attorneys' fees can be considered in determining whether the amount in controversy is satisfied. Attorneys' fees become "part of the matter put in controversy by the complaint, and not mere costs excluded from the reckoning by the jurisdictional and removal statutes." *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933) (quotation marks omitted). The Ninth Circuit held that attorneys' fees may be included in the amount in controversy where the underlying statute authorizes an award of attorneys' fees with either mandatory or discretionary language. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Attorneys' fees are granted by statute here and such fees are treated as costs under California law. *See* Cal. Lab. Code §§ 1194, 218.5, 226, 2802, and 2810. Therefore, attorneys' fees are part of the matter put in controversy and can be included in the amount in controversy to satisfy the jurisdictional threshold.

ServiceLink adds $75,000 to its total calculations in attorneys' fees alone by multiplying a "reasonable" $300 per hour rate by 250 hours of attorney time, alleging that this amount is routinely exceeded in other similar wage and hour matters. (Notice of Removal ¶ 28.) This backwards calculation unreasonably assumes that $75,000 will be met and then strives to meet this number by filling in the appropriate attorney rate and

work time. ServiceLink offers no other evidence or justification to show that Collins' attorneys actually billed this amount or what portion of this $75,000 will be used for Collins' individual claims or the class claims. Collins correctly notes that "attorneys' fees are not awarded solely to the named plaintiffs in a class action, and that they therefore cannot be allocated solely to those plaintiffs for purposes of amount in controversy." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001). The parties also argue as to whether the Court should consider attorneys' fees accrued up until or after removal. However, the Court need not consider these arguments because ServiceLink's attorneys' fees calculation appears to be pulled from "thin air" and therefore does not meet the preponderance of the evidence standard. *Ibarra*, 775 F.3d at 1199.

Because the majority of ServiceLink's calculations involve unreasonable assumptions that are unsupported by allegations in the original state court complaint, ServiceLink did not meet its burden to show that the amount in controversy as to Collins' individual claims is met.

### B. Claims Under CAFA

Collins argues that ServiceLink does not meet its burden to show that the amount in controversy for the CAFA claims is met because the calculations stem from the inflated estimate of Collins' individual claims. Under CAFA, a

> mass action is any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under § 1332(a).

*Abrego Abrego* 443 F.3d at 678 (internal quotations omitted). Furthermore, the aggregate amount in controversy must exceed $5,000,000. *Id.* "[I]f a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million . . . and

to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197.

In the notice of removal, ServiceLink multiplies its earlier $177,000 calculation for Collins' individual claims by the alleged 300 class members stated in the complaint to arrive at a $53,000,000 amount in controversy, not including attorneys' fees. (Notice of Removal ¶ 38.) As mentioned above, the $177,000 calculation was the result of unreasonable assumptions that did not meet the preponderance of the evidence standard. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using *reasonable assumptions* underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198 (emphasis added). The Court therefore concludes that the alleged $53,000,000 in class damages is greatly inflated and similarly unsupported by any reasonable grounds. ServiceLink thus failed to meet its burden to show that the $5,000,000 amount in controversy under CAFA is met.

ServiceLink offers various authority stating that the proper benchmark multiplier for estimating attorneys' fees in class actions is either 25% or 33%. (Notice of Removal ¶ 39-40; Opp'n at 8, 16, 21.) However, these amounts would be a percentage of the total estimated class settlement, which, in this case, would be the $53,000,000 asserted by ServiceLink. As discussed above, this settlement amount is unsupported by any summary-judgment-type evidence and cannot be used to estimate an accurate anticipation of attorneys' fees.

### C. Amendment of the Notice of Removal

In the notice of removal, ServiceLink calculated the total amounts in controversy for Collins' individual claims at approximately $177,000 and for the CAFA claims at over $53,000,000, not including attorneys' fees or the alleged unpaid sick time. (Notice of Removal (doc. no. 1) ¶¶ 30, 38.) These calculations assume that Collins incurred eight hours of unpaid minimum wages and meal and rest period penalties on each possible work day during the entire four-year liability period. However, ServiceLink offers new damage calculations in its opposition to Collins' motion to remand.

Under *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002), an opposition can be construed as an amendment to the original notice of removal. *See Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969) (district court did not err in construing opposition as an amendment to notice of removal, because "it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits"); *See also* 28 U.S.C. § 1653 ("defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"). However, the Ninth Circuit held that "the removal petition cannot be thereafter amended to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made." *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317 (9th Cir. 1969).

The defendant in *Barrow* was permitted to amend its removal petition after failing to disclose both the state of incorporation and the corporation's principal place of business when asserting diversity jurisdiction, which did not satisfy the removal statute requirement of a "short and plain statement of the facts." *Id.* The court in *Barrow* reasoned that this allegation was "at worst ambiguous" and "defective in form but not so lacking in substance as to prevent [its] amendment." *Id.* at 318. In contrast, the new calculations in ServiceLink's opposition do not merely clarify its allegations in the notice of removal. Instead, ServiceLink switches from using a full-time, 100% violation rate to using a "part-time, 20-hour per week, schedule" to assert that the amounts in controversy are met. (Opp'n at 10.) These new calculations reduce the original amount in controversy estimates by over $60,000,000. This kind of drastic change more so reflects substantive modification of prior allegations rather than a mere clarification. Therefore, the Court distinguishes this case from *Barrow* and does not construe ServiceLink's opposition as an amendment to the notice of removal.

Therefore, in accordance with *Gaus*, the Court must reject federal jurisdiction in light of the overwhelming doubt as to the right of removal in the first instance. *Gaus*, 980 F.2d at 566; *See also Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th

Cir. 1979) (stating that 28 U.S.C. 1447(c) requires the court to remand the case if at any time before final judgment it appears the case was removed improvidently).

## IV. CONCLUSION & ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion and hereby **REMANDS** this matter to the San Diego Superior Court. Defendant's pending motion to dismiss is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: April 9, 2019

Hon. M. James Lorenz
United States District Judge